The opinion of the court w.as delivered- by
Gibson, C. J.
The notion of-a tax on fees was first put in practice in 1801, when the legislature laid a tax on fees received by the prothonotary of the Supreme Court, first deducting' two thousand dollars which were allowed him clear of tax. In 1806, the sum to be deducted was increased to two thousand five hundred dollars, without, however, changing the principle of accountability which embraced fees received only while in office. In the same year, and with the same limitation, the legislature laid, a taxon the fees received by the prothonotaries or clerks of each of the courts in the Commonwealth. These acts were repealed and supplied by the act of 1810,- which, as it.is one of the two on which the question depends, mer-it^ a particular examination. It provides *259 that .the officer shall keep an account of all fees received in his office, and annually thereafter furnish the auditor general with a copy; ■and whenever the amount shall exceed the sum of fifteen hundred dollars, the' auditor general shall charge the accountant fifty per cent, on the amount of such excess. In this there is certainly no express change of the principle of accountability, the provisions being exclusively applicable to persons in office.
The argument on the part of the commonwealth is, that the object was to give the officer a salary which should not exceed fifteen hundred dollars without being subject to the tax, rendering him accountable for the excess without regard to the time when received. But this construction is attended with the absurdity of allowing a salary to a person who has rendered no services. Those who are •subject to the mandatory parts of the act, must necessarily be entitled to the benefit of such provisions as aré favourable; and an officer-out of place, would be entitléd to the same allowance as if he were still in office. This consequence, would be inevitable; and it is therefore reasonable to presume that the' notion of a salary was not entertained. The truth is, the fees supposed to be received by .officers out of place were not deemed worthy of attention. This seems the more probable by considering that the act of 1810 is in •terms like the preceding acts; arid, under these, the practice of requiring none but the existing officers to account, was notorious. With this practice before their eyes, it is fair to presume, the legislature would have introduced a change of provision had a change of the practice been meditated. There is every reason to think that the act of 1818, by vvhich the principle of accountability has been entirely changed,- was passed in consequence of the attention of. the legislature having been awakened to the importance of the subject, by. certain accounts which, it appeared in the argument, were voluntarily submitted to the-auditor general by displaced officers who thought themselves bound by.the construction proposed -on the part of the commonwealth. However this may be, the passing of that act is a legislative -recognition of the eoustructioh contended for by the plaintiff in error.
If, then, both the letter and the intention accord with that construction, by what authority shall.we declare the meaning of the legislature to have been otherwise? Granting that the legislature would, in 1810, have enacted the same provisions that they did in 1818, had they been apprized of the true state of things that then existed, yet they have not done so; and for us to supply what we might suppose a deficiency, would be an act of judicial legislation of the worst sort, because not only judicial but retrospective. Taxation is an act of power, not to be extended' by implication; the more particularly in a case like the present, where the burden is laid not on the public, but on a particular class.
The case, however, is said to be within the purview of the act of 1818. By that act, it is made the duty of-the successor of any *260 displaced officer who shall pay over surplus fees to his predecessor, to take duplicate receipts and transmit one-of them to the auditor general, with a statement of such fees; and the auditor general is required to settle the account, charging the late officer with such proportion as would have been paid to the commonwealth had he remained in office, flow this act can, without violence, be applied to transactions that were finished when it was passed, I cannot discover. Its provisions are adapted to cases where the existing officer shall have taken duplicate receipts and transmitted one of them, together with a- statement of the account, to the auditor general; which surely cannot be■ predicated of transactions long past, without those things having been done. The act, as it seems to me, is plainly prospective in all its parts. But if that were even dpubtful, we ought to avoid a construction that would give it a retrospective effect. It is said it would operate only on fees not then received; and that to tax a debt due like any other species of property would be perfectly constitutional. So u’ould it be to tax the dollars in thé officer’s pocket. But-this is .no answer to the objection, that to bring the act to bear on fees which were earned when it was passed, would give it a retrospective effect. The officer accepted the office under a law which allowed him all surplus fees received when not in office;, and for the commonwealth to share them with him in the form of- a tax, would deprive him of what the law had guarantied to him as his property. In this way every invasion of the right of property might be justified.- But by the constitution, private property is not to be taken for public use without making compensation;' and we aré bound to construe a law of doubtful meaning so as not to impinge on either the letter or spirit pf the constitution. As a law of prospective operation, the act is, on the other hand, founded not. only in the principles of the constitution, but of the most severe morality. Where the office is taken with an assurance that the emoluments are in fact what they seem, the officer cannot complain that the compensation, is inadequate to the services.- But, to decrease the compensation after it had been earned, would be palpably unjust. The authorities cited prove beyond contradiction, that a law which is not peremptory, ought not to be so construed as to impair vested rights. Here, however, instead of affecting the right to fees then earned, the provisions .of the act point a different way; and I am perfectly satisfied the construction put on these laws .by the court below cannot be sustained.
Huston, J.
The following acts of assembly were referred to. as material in this case:—
The.act of the 24th February, 1806, sect. 27. The prothonotaries or clerks of the Supreme Court, and prothonotaries or clerks of the several courts of Quarter Sessions of the peace and Common Pleas within this commonwealth, shall annually furnish to the re *261 gister and comptroller general an accurate-account'of-the fees- re» ceived in each of their offices, respectively, in the manner prescribed by the act above cited; and of the amount of fees received during each year by each of the prothonotaries, respectively, as aforesaid: fifteen hundred dollars shall be and remain clear of tax,
■ and the residue.thereof shall be taxed and accounted for agreeably to the provisions of the aforesaid act.
The act of the 10th of March, 1810, after enumerating several offices, says, they shall from and after the first day of October next, keep or cause to be kept a fair and accurate account of all the fees received for services performed by them, or any person employed by them, in their respective offices; and shall annually thereafter furnish a copy of such account upon oath or affirmation to the auditor general, who shall proceed to examine the account so furnished by the officers aforesaid: and whenever the amount of any accounts shall exceed the sum of fifteen hundred dollars, the auditor general shall charge the said officers, respectively, fifty per cent, on the amount of such excess; which sum, so charged, shall he paid by them into the treasury for the.use of the commonwealth. A neglect to comply with these provisions is made a misdemeanor, and the governor shall remove Such officer from office. And the auditor general shall have the same power to compel the-said officers, respectively, to furnish their accounts for settlement, and to Compel the payment thereof, as he -has in other cases.
On the 30th of March, 1811, was passed an, act to amend and' consolidate the several acts relating to the settlement of public accounts, and the payment of public monies, and for other purposes. This act- gives the auditor general very extensive powers over bodies corporate, officers, and other persons interested with- the receipt, or who may have received, or shall hereafter become possessed of public money. And throughout the general clauses, officers and other persons who have become possessed of public monies, are put equally within his power. In the seventeenth and following sections, treasurers, brigade inspectors, sheriffs, auctioneers,and secretaries of the commonwealth are each directed to furnish accounts at stated times annually: and yet there is no express provision authorizing the auditor general to compel settlement and payment after any of those officers have gone out of office. Under the general expressions, though, of persons in the receipt of, or possession of public monies, they have universally been cited and compelled to settle and pay, after having gone out of office.
On the 24th of March, -1818, was passed a supplement to the act taxing certain offices. It provides that in case of the death or removal from office of any officer, who by Jaw is accountable to the commonwealth for certain surplus fees of office, it shall be the duty of his successor or successors in office, who from time to time may receive and pay over such fees to his predecessor in office, to take duplicate receipts for the same, and transmit one of those receipts *262 to the auditor general,'together with a statement of such fees as may otherwise be.received by such predecessor from time to time, as far as he may be able .to ascertain the same. And it shall be the duty of the auditor general from time to time to settle the accounts of the late officer to whom such fees shall have been paid, and compel him to account upon oath or affirmation, and to pay over such proportion of the arrearages of fees so received by him, as would have been' paid to the commonwealth had he remained in office, allowing to such officer in case of deficiency in any year while ho shall have held his office, such sum as shall make up the whole sum he would have been entitled to have retained free from any tax thereon.
This last has in the argument been called a retrospective law, and of course made the subject of much censure. I do dot consider it retrospective. It ‘assumes that these officers are liable for fees received after being out of office, for services performed during their continuance in office; "and prescribes an. additional mode of procuring evidence of the.amount so received.
This case presents four several points for the consideration of the court, and every one-of them is important itr case the preceding one is decided against the commonwealth.
I am of opinion the first was decided rightly in the Common Pleas, The real construction of the three first acts is, that the fees are to be considered received at the time they are earned. If, however, any part of them-cannot be recovered, the officer is not chargeable with such part. This was the contemporaneous construction: so accounts were settled in 1812, of officers who had gone out of office before 1810, (though, in another respect, I think a palpably erroneous principle was adopted in these settlements.) Taking the whole of the acts together, the officer is to be allowed fifteen hundred dollars a year, during the whole time he is in office, and the commonwealth is entitled to fifty per cent, of the overplus, to be paid whenever received, no matter whether actually received during the continuance of the office or after.
The construction contended for by the plaintiff in error, goes to defeat tlie act entirely, by taking care not to receive any more than fifteen hundred dollars'within the year,'and leaving-all the rest in the hagds'of the-sheriff, or of the defendant, and taking a bond or note for it: an officer,, in a large county, may make a provision for himself for many years to come. If the officer, for the time being, retains fifteen hundred- dollars, and the officer, who has been removed retains fifteen hundred dollars out of fees 'due, but not collected till he is out óf office, there .may be two several sums of fifteen hundred dollars retained from fees received for the same office, in the same county, for the same year, than which nothing could be more contrary to the law.
If bonds or notes can be taken from sheriff, or from defendant,' on leaving the fees in their hands, no money will ever- come into *263 tbe treasury from a tax on officers hereafter. Such construction ought never to be put on any statute as will entirely defeat its object, or as will leave it. effective against one person, but put it in the power of another totally to evade its provisions, and rewards him for doing so.
But it is said none of the three first acts speak of or contemplate money to be received from an ex-officer. I have, in part, given my opinion on that point, that the legislature considered the fees as not only due and payable, but as actually paid within the year: and,'in point of fact, everything, except continuances and other docket entries, were paid at the time the service was performed, to the prothonotary of the Supreme Court, who was first taxed. Büt I have another answer: we have many acts directing public officers to account for monies-; county treasurers, sheriffs, auctioneers, the secretary of land office, the surveyor general, &c. The laws, in all cases, express that their accounts shall be settled annually, quarterly, &e., and while the several officers are in office. Yet, from the origin of our government, those who have .public monies have been compelled to settle and pay after going out of office; and the act of the 30th of March, 1811, 5 Smith, 228, expressly authorizes the auditor general to call to account all persons in the receipt or possession of public monies, and gives .very ample powers to the auditor general and treasurer, not only to compel settlements, but payment; and neither the law nor-the practice under it, has ever discriminated between a defaulter still in office, or one who has gone out of office. -And I cannot discover any reason for a distinction in favour of the latter. . •
In my opinion, the decision ought to have been for the- commonwealth, on each of the points, and that the judgment ought to have been affirmed.
Ton, J- concurred with PIuston, J.
Rogers and Smith, Jo,, concurred with the Chief Justice.,
Judgment reversed, and judgment on the case stated rendered: for the defendant below..